IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

JEFFREY TOME,

          Defendant.

24-CR-6112 FPG

---

### PLEA AGREEMENT

The defendant, JEFFREY TOME, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.    THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and to plead guilty to a one count Information which charges a violation of Title 26, United States Code, Section 7206(1) (filing a false tax return), for which the maximum possible sentence is a term of imprisonment of 3 years, a fine of $250,000, a mandatory $100 special assessment and a term of supervised release of 1 year. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 1 year, without credit for time previously served on supervised release. As a consequence, in the event the defendant

is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

   a. that defendant made or caused to be made, and signed an income tax return for the year in question that was false as to a material matter;

   b. that the return contained a written declaration that it was made under the penalties of perjury;

   c. that defendant did not believe the return to be true and correct as to the material matters charged; and

   d. that the defendant mad or caused to be made, and signed the return willfully.

## FACTUAL BASIS

4. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

Background

   a. The defendant owns Tome Enterprises Inc., a gutter business that operates out of 143 Barrington Street, Rochester, NY 14607. Tome Enterprises Inc. provides gutter repair and installation services to clients in the Rochester area. Tome Enterprises Inc. was founded by Jeffrey Tome on April 27, 1998. After providing gutter services to its clients, Tome Enterprises Inc. was paid for such services primarily by check.

b.  Tome Enterprises Inc. was an S Corporation required to file a Form 1120S, U.S. Income Tax Return for an S Corporation, every year with the Internal Revenue Service (IRS). As an S Corporation, the net profits from the corporation were required to be reported as income on the defendant's personal Form 1040 federal income tax returns. The defendant was then required to pay income taxes based on the income he received from Tome Enterprises, Inc. In addition, Tome Enterprises Inc. was required to pay payroll taxes to the IRS based on the wages paid to Tome Enterprises Inc.'s Employees.

Tome Enterprises, Inc.'s Unreported Gross Receipts

c.  For the years 2017 through 2021, rather than deposit approximately 1,679 checks received from Tome Enterprises Inc.'s customers totaling $1,719,283.45 into Tome Enterprises Inc.'s business bank account, the defendant cashed such checks at a local check cashing business. The defendant then intentionally failed to advise Tome Enterprises Inc.'s return preparer of the cash that was received from cashing such business checks. As a result, the following amounts of gross receipts were not reported on Tome Enterprises, Inc.'s corporate income tax returns:

| Year | Checks Cashed |
|---|---|
| 2017 | $ 309,727.60 |
| 2018 | $ 315,439.65 |
| 2019 | $ 326,459.00 |
| 2020 | $ 447,819.95 |
| 2021 | $ 319,837.25 |
| Total | $1,719,283.45 |

Tome Enterprises, Inc.'s Net Profits

d.  From the total amount of $1,719,283.45 received from the checks cashed, the defendant paid fees to the check cashing business totaling $36,907.72 and then paid Tome Enterprises Employees some of or all their wages in cash totaling $407,573.60. The remaining amount of cash received from the checks cashed, $1,274,802.13, was kept by the defendant.

e.  The remaining amount of cash received from the checks cashed ($1,274,802.13) represented net profits for Tome Enterprises, Inc., which did not get reported on Tome Enterprises, Inc.'s corporate tax returns, and therefore, did not flow through to nor get reported on the defendant's personal federal income tax returns.

 f. Specifically, for the years 2017 through 2021, the income the defendant failed to report on his personal tax returns and the taxes he failed to pay were as follows:

| Year | Unreported Income | Taxes Not Paid |
|---|---|---|
| 2017 | $ 244,141.22 | $ 82,351.00 |
| 2018 | $ 237,088.23 | $ 42,441.00 |
| 2019 | $ 251,372.61 | $ 51,818.00 |
| 2020 | $ 331,922.41 | $ 81,769.00 |
| 2021 | $ 210,277.66 | $ 71,758.00 |
| Totals | $1,274,802.13 | $ 330,137.00 |

 g. By not reporting as income on his personal tax returns his portion of the net profits generated by Tome Enterprises, Inc., the defendant willfully made and subscribed false Forms 1040, U.S. Individual Income Tax Returns, for the tax years 2017 through 2021, which was verified by a written declaration that they were made under penalty of perjury and, which the defendant did not believe to be true and correct as to every material matter.

Unpaid Payroll Taxes

 h. The $407,573.60 in cash that the defendant paid to the employees of Tome Enterprises Inc. represented wages paid to the employees for which payroll taxes should have been paid. The payroll taxes that the defendant failed to pay to the IRS were $62,358.76.

Total Loss for Guideline Purposes

 i. The total loss for sentencing guideline purposes is $392,495.76 ($330,137.00 in personal income taxes and $62,358.76 in payroll taxes).

### III. SENTENCING GUIDELINES

5. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## BASE OFFENSE LEVEL

6.  The government and the defendant agree that Guidelines §§ 2T1.1(a)(1) and 2T4.1(G) apply to the offense of conviction and provide for a base offense level of 18 because the total tax loss is more than $250,000 ($392,495.76).

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

7.  The government and the defendant agree that there are no specific offense characteristics that apply.

## ADJUSTED OFFENSE LEVEL

8.  Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is 18.

## ACCEPTANCE OF RESPONSIBILITY

9.  At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level decrease of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of 15.

## CRIMINAL HISTORY CATEGORY

10. It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the

defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

11. Furthermore, it is the understanding of the government and the defendant that the defendant meets the criteria for the two-level downward adjustment of Guidelines §4C1.1(a) (Adjustment for Certain Zero Point Offenders). The application of this adjustment results in a total offense level of 13.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

12. It is the understanding of the government and the defendant that, with a total offense level of 13 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of 12 to 18 months, a fine of $5,500 to $50,000, and a period of supervised release of 1 year. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

13. The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

14. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

15. In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

### IV. STATUTE OF LIMITATIONS

16. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

### V. REMOVAL

17. The defendant represents that he is a citizen of the United States. However, if the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI. GOVERNMENT RIGHTS AND OBLIGATIONS

18. The defendant understands that the government has reserved the right to:

a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c. advocate for a specific sentence consistent with the terms of this agreement including the amount of [restitution and/or] a fine and the method of payment;

d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

e. oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

19. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII. RESTITUTION AND PAYMENT OF TAX LIABILITY

20. The defendant agrees to pay restitution to the Internal Revenue Service in the total amount of $392,495.76 pursuant to Title 18, United States Code, Section 3663(a)(3), plus interest on the tax from the due date of the tax return at the rates specified in 26 U.S.C.

§§ 6621 and 6622, and plus a fraud penalty under 26 U.S.C. § 6663 or 26 U.S.C. § 6651(f). The defendant understands that defendant will not be entitled to withdraw the plea of guilty based upon any restitution amount ordered by the Court.

21.     The restitution amount includes $330,137 in personal income taxes and $62,358.76 in payroll taxes. The payroll taxes broken out by quarter are as follows:

| Period | Cash Payroll | Employment Tax Liability |
|---|---|---|
| 201703 | $ 14,827.54 | $ 2,268.61 |
| 201706 | $ 14,827.55 | $ 2,268.62 |
| 201709 | $ 14,827.54 | $ 2,268.61 |
| 201712 | $ 14,827.55 | $ 2,268.62 |
| 201803 | $ 17,957.53 | $ 2,747.50 |
| 201806 | $ 17,957.53 | $ 2,747.50 |
| 201809 | $ 17,957.53 | $ 2,747.50 |
| 201812 | $ 17,957.53 | $ 2,747.51 |
| 201903 | $ 17,051.35 | $ 2,608.85 |
| 201906 | $ 17,051.36 | $ 2,608.86 |
| 201909 | $ 17,051.36 | $ 2,608.86 |
| 201912 | $ 17,051.36 | $ 2,608.86 |
| 202003 | $ 26,480.85 | $ 4,051.57 |
| 202006 | $ 26,480.85 | $ 4,051.57 |
| 202009 | $ 26,480.85 | $ 4,051.57 |
| 202012 | $ 26,480.85 | $ 4,051.57 |
| 202103 | $ 25,576.11 | $ 3,913.14 |
| 202106 | $ 25,576.12 | $ 3,913.14 |
| 202109 | $ 25,576.12 | $ 3,913.15 |
| 202112 | $ 25,576.12 | $ 3,913.15 |
|  |  | $62,358.76 |

22.     The defendant agrees that the total amount of restitution reflected in this agreement results from the defendant's fraudulent conduct.

23.     The civil fraud penalty and interest due as of August 1, 2024, for the personal income taxes of $330,137 due from the defendant for the tax years at issue are as follows:

9

| Year | Fraud Penalty | Interest Due |
|---|---|---|
| 2017 | $ 61,763.25 | $ 55,321.87 |
| 2018 | $ 31,830.75 | $ 23,217.82 |
| 2019 | $ 38,863.50 | $ 21,737.46 |
| 2020 | $ 61,326.75 | $ 29,014.25 |
| 2021 | $ 53,818.50 | $ 21,082.57 |
| Totals | $247,602.75 | $150,373.97 |

24. The total amount of personal income taxes ($330,137.00), civil fraud penalty ($247,602.75), and interest through August 1, 2024 ($150,373.97) due from the defendant for the years 2017 through 2021 is $790,472.48.

25. The defendant agrees to pay restitution by making payment as ordered by the Court in any restitution order entered pursuant to this plea agreement.

26. If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. See 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

27. The defendant agrees that the defendant will not oppose bifurcation of the sentencing hearing under 18 U.S.C. § 3664(d)(5) if the victims' losses are not ascertainable prior to sentencing.

28. The defendant agrees that the defendant and the defendant's spouse will sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of that portion of the tax and interest that he agrees to pay as restitution. The defendant also agrees to sign IRS Form 8821, "Tax Information Authorization."

29. The defendant agrees not to file any claim for refund of taxes or interest represented by any amount of restitution paid pursuant to this agreement.

30. The defendant agrees that the defendant is liable for the fraud penalty under 26 U.S.C. § 6663 or 26 U.S.C. § 6651(f) on the amount to be credited to tax set forth above. The defendant agrees to the immediate assessment of the fraud penalty on the amount to be credited to tax set forth above and agrees that, in order to enable the IRS to make an immediate assessment of the fraud penalty, any IRS forms the defendant and the defendant's spouse agreed to sign as set forth above will include the appropriate amount of the fraud penalty. The defendant and the defendant's spouse agree not to challenge or dispute any fraud penalties on the amount to be credited to tax set forth above.

31. The parties understand that the defendant will receive proper credit, consistent with the above, for the payments made pursuant to this agreement. Except as set forth in the previous sentence, nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest due from the defendant for the time periods covered by this agreement or any other time period.

32. The defendant agrees that this agreement, and any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time periods covered by this agreement or any other time period.

33. The defendant understands that the defendant is not entitled to credit with the IRS for any payment sent to an incorrect address or accompanied by incomplete or inaccurate information, unless and until any payment is actually received by the Internal Revenue Service and identified by it as pertaining to the defendant's particular liability.

34. The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing. The defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. The defendant agrees to discuss or answer any questions by the United States relating to the defendant's complete financial disclosure. The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office. The defendant certifies that the defendant has made

no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

35. The defendant understands and agrees that the Court, at the time of sentencing, will order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and will be (i) subject to immediate enforcement as provided for in 18 U.S.C. § 3613, and (ii) submitted to the Treasury Offset Program (TOP) so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect any periodic payment schedule set by the Court.

36. The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

37. The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to offset any judgment of restitution and fine imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the United States and/or agencies thereof.

38. To the extent that the defendant has an interest, the defendant authorizes the District Court Clerk to release any funds posted as security for the defendant's appearance bond in this case, which funds shall be applied to satisfy the financial obligation(s) of the defendant pursuant to the judgment of the Court.

39. The defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor in considering whether the defendant has accepted responsibility under the United States Sentencing Guidelines § 3E1.1.

## VIII. APPEAL RIGHTS

40. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section VII of this agreement.

41. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

42. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## IX. TOTAL AGREEMENT AND AFFIRMATIONS

43. This plea agreement represents the total agreement between the defendant, Jeffrey Tome, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

TRINI E. ROSS
United States Attorney
Western District of New York

BY: _____
RICHARD A. RESNICK
Assistant United States Attorney

Dated: August __1__, 2024

I have read this agreement, which consists of pages 1 through 16. I have had a full opportunity to discuss this agreement with my attorney, Max T. Stoner, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I

understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____  _____
JEFFREY TOME                                                MAX T. STONER, ESQ.
Defendant                                                         Attorney for the Defendant

Dated: August 1, 2024                              Dated: August 1, 2024